IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:14-CV-00085-RLV-DCK

| | |
|---|---|
| JAMES LEE PARLIER, JR., AN INDIVIDUAL (D/B/A JIMMY PARLIER HORSE TRANSPORT, PARLIER FARMS, AND PARLIER EQUINE TRANSPORT & CARRIAGES), ) ) ) ) ) ) Plaintiff and Counter-Defendant, ) ) v. ) ) BRENDA CASTEEN, ET AL., ) ) Defendant and Counter-Plaintiff. ) ) | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on Defendant and Counter-Plaintiff Brenda Casteen's (hereinafter, "Casteen") original and renewed Motions to Dismiss and for Contempt, Sanctions, and Attorneys' Fees (collectively, the "Motion"). [Doc. No. 66]; [Doc. No. 71]. In her Motion, Casteen also moved for default judgment against Plaintiff (hereinafter, "Parlier"), and requested that this Court conduct an evidentiary hearing to determine damages. *See* [Doc. No. 66] at p. 3; [Doc. No. 71] at p. 3. On February 25, 2016, the Court granted the Motion, in-part, and placed Parlier in default as to Casteen's amended counterclaim (Doc. No. 44). *See* [Doc. No. 72]. The Court deferred consideration of the remainder of the Motion until an evidentiary hearing could be held for the dual purposes of entering a default judgment and awarding damages. *Id.* A hearing on Parlier's default was subsequently held before this Court on April 7, 2016. For the reasons that follow, default judgment in favor of Casteen and against Parlier is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I. DISCUSSION[1]

### A. Standard of Review

The entry of default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure, which provides, in relevant part, that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once a default is entered, a party seeking affirmative relief may seek a default judgment against the defaulting party. Fed. R. Civ. P. 55(b). Both a default and a default judgment may be ordered by the court as a sanction under Rule 37 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. Pro. 37(b)(2)(iii)&(vi).

Upon entry of default, the defaulting party is deemed to have admitted all well-plead allegations of fact contained in a counterclaim. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."). However, the defaulting party is not deemed to have admitted conclusions of law, and the entry of "default is not treated as an absolute confession by the [defaulting party] of his liability and of the [claimant's] right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Const. Co.*, 515 F.2d at 1206). Rather, in determining whether to enter judgment on the default, the court must determine whether the counterclaim's well-plead allegations support the relief sought. *See Ryan*, 253 F.3d at 780; *see also Silvers v. Iredell Cnty. Dep't of Soc. Servs.*, 2016 U.S. Dist. LEXIS 13865, at *9-21 (W.D.N.C. Feb. 3, 2016) (Voorhees, J.) ("[W]hen reviewing a motion for default

---

[1] A detailed procedural background is discussed in this Court's February 25, 2016 Order. [Doc. No. 72]; *see also Parlier v. Casteen*, No. 5:14-CV-00085-RLV-DCK, 2016 WL 775834 (W.D.N.C. Feb. 25, 2016).

judgment, this Court must examine the legal sufficiency of the facts alleged on the face of the . . . complaint [in accordance with *Twombly* and *Iqbal*]."); *accord* 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civ. § 2688 (3d ed. Supp. 2015) ("[L]iability is not deemed established simply because of the default and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the court finds that liability has been established, it must then determine damages. *See Ryan*, 253 F.3d at 780-81; *Arista Records LLC v. Gaines*, 635 F. Supp. 2d 414, 416-18 (E.D.N.C. 2009). Such a determination requires an independent examination of the evidence, and the court must not accept mere allegations of damages as being sufficient. *See*, *e.g.*, *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005). Under Rule 55 and established law, the court may sit to determine any damages owed to the claimant due to another party's default.[2] *See* Fed. R. Civ. Pro. 55(b)(2). In so doing, the court may rely on hearing testimony, affidavits, or documentary record evidence to determine the appropriate amount of damages. *See id.*; *see also Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the

---

[2] By filing her Motion and participating in the damages hearing, Casteen has waived her constitutional right to have a jury trial on the issue of damages, and has consented to having this Court sit as finder-of-fact regarding the same. *See* [Doc. No. 66] at p. 3; [Doc. No. 71] at p 3 ("Wherefore Defendant Casteen renews her request for the Court . . . [t]o enter an order entering a default judgment in favor of Defendant Casteen on her counterclaims . . . [and] [t]o enter an order scheduling a hearing on the determination of damages due to Defendant Casteen on her counterclaims[.]"); [Doc. No. 74] at p. 1 (¶ 1) ("My name is Brenda Casteen. . . . I am submitting this affidavit in support of the Court's calculations [*sic*] of damages on the Default Judgment in this matter."); *accord Haagensen v. Winter*, 2011 WL 1485684, at *2 (W.D. Pa. 2011). Additionally, by having default entered against him, Parlier has waived his constitutional right to have a jury determine the issue of damages. *See* Fed. R. Civ. Pro. 55(b)(2) (preserving only a *statutory* right to a jury trial upon default); *see also Sonoco Products Co. v. Guven*, 2015 WL 127990, at *7 n.5 (D.S.C. 2015); *Verizon Cal. Inc. v. Onlinenic, Inc.*, 2009 WL 2706393, at *2 (N.D. Cal. 2009) ("Case law dating back to the eighteenth century . . . makes clear that the constitutional right to [a] jury trial does not survive the entry of default." (quoting *Benz v. Skiba, Skiba & Glomski*, 164 F.R.D. 115, 116 (D. Me. 1995), citing *Brown v. Van Bramm*, 3 Dall. [U.S.] 344, 355 (1797))); *accord Adriana Int'l Corp. v. Lewis & Co.*, 913 F.2d 1406, 1414 (9th Cir.1990) (holding that after default, "a party has no right to jury trial under either Fed .R. Civ. P. 55(b)(2), which authorizes a district court to hold an evidentiary hearing to determine the amount of damages, or the Seventh Amendment"); *Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir.1974) ("[T]he Seventh Amendment right to trial by jury does not survive a default judgment.").

amount which the [claimant] is lawfully entitled to recover and to give judgment accordingly."); *EEOC v. North Am. Land Corp.*, 2010 U.S. Dist. LEXIS 78928, at *4-6 (W.D.N.C. 2010).

B. <u>The Material and Well-Plead Facts Admitted by Parlier's Default</u>

This action arises out of certain wrongs alleged to have occurred during Parlier and Casteen's personal and business dealings.[3] In 2009, Casteen purchased a Peruvian Paso Mare horse named Allie ("Allie") from Parlier. [Doc. No. 44] at p. 14 (¶ 1). In November 2011, Casteen purchased a Belgian/Percheron Cross Mare horse named Ruby ("Ruby"), a Belgian Draft Mare horse named Buttercup ("Buttercup"), and a Bay Mare Mule named Maggie ("Maggie"). *Id.* at pp. 14-15 (¶¶ 3, 7, 10). Thereafter, Parlier and Casteen entered into an agreement whereby Parlier would sell both Ruby and Buttercup and later divide the proceeds from the sales with Casteen. *Id.* at pp. 14-15 (¶¶ 4, 8). The parties also entered into an agreement whereby Parlier would sell Maggie, reimburse Casteen for the costs associated with Maggie's purchase, and later divide the proceeds from the sale with Casteen. *Id.* at pp. 15 (¶ 11). Rather than place either Ruby or Buttercup up for sale, Parlier reneged on his deal with Casteen, retained possession of the horses, and began using them as part of Parlier Equine Transport and Carriages (the "Carriage Business"), a business operated by Parlier. *Id.* at pp. 14-15 (¶¶ 5-6, 9). Parlier did, however, broker a sale of Maggie; yet, following the transaction, Casteen was not reimbursed for her costs, and the balance of the proceeds from the sale were not shared with her. *Id.* at p. 15 (¶ 12). Parlier also retained possession of Allie without Casteen's permission. *Id.* at p. 21 (¶¶ 112-114).

---

[3] Plaintiff filed various state law claims which arise out of certain alleged abusive interactions between Parlier and Casteen during the course of their romantic relationship, including, *inter alia*, allegations of assault and battery. *See* [Doc. No. 44] at pp. 16-19 (¶¶ 35-78). As will be discussed below, Casteen has not submitted any evidence of damages related to those claims. Rather, she has submitted evidence only on those claims directly related to her business transactions with Parlier. Accordingly, the Court will only recount the factual allegations that relate to the parties' business transactions, as such allegations are the only ones that are material to the disposition of this matter. The factual allegations related to abuse and other similar torts concern claims to which Casteen is entitled to nominal damages only and, as such, the allegations related to their romantic entanglement will not be recounted at length here.

In addition to the above, Parlier agreed to sell another of Casteen's horses; however, in that instance, the parties ultimately decided that Parlier would grant Casteen possession of a Draft Gelding Horse named Jameson ("Jameson") *in lieu* of splitting the proceeds from the sale. *See* [Doc. No. 44] at p. 15 (¶¶ 13-16). In brokering this trade (the "Jameson trade"), Parlier represented to Casteen that Jameson was of equal value to the horse being sold, and provided documentation showing Jameson to be five (5) years old at the time of the transaction. *Id.* at p. 15 (¶¶ 17-20). However, Parlier forged Jameson's documentation and it was later discovered that the horse was actually between twelve (12) and fourteen (14) years old. *Id.* at pp. 15-16 (¶¶ 21-22, 34).

During the above-discussed dealings, Parlier and Casteen were involved in a romantic relationship, which began in July 2011. [Doc. No. 44] at p. 14 (¶ 2). Over the course of that relationship, Casteen kept her horses, including Allie, Ruby, Buttercup, and Jameson, at Parlier's barn.[4] *Id.* at p. 15 (¶ 23). On June 1, 2012, the parties terminated their romantic relationship. *Id.* at p. 16 (¶ 24). At that time, Casteen attempted to leave Parlier's home with her horses. *Id.* at p. 16 (¶ 25). Parlier initially refused to allow Casteen or her horses leave; however, he eventually relented and allowed Casteen to return to her apartment with some of her belongings. *Id.* at p. 16 (¶¶ 26-27). Over Casteen's objections, Parlier retained custody of Allie, Ruby, and Buttercup. *Id.* at p. 16 (¶¶ 29-33).

This action was subsequently filed on May 29, 2014. *See* [Doc. No. 2]. On October 9, 2014, Casteen filed her amended counterclaim against Parlier. [Doc. No. 44]. The amended counterclaim alleges several causes of action against Parlier, including (1) claim and delivery; (2) breach of contract; (3) implied contract/*quantum meruit*/unjust enrichment; (4) conversion; (5) possession

---

[4] The Court notes that Paragraph 23 of the amended counterclaim alleges that the horses were kept "at Defendant's residence." [Doc. No. 44] at p. 15 (¶ 23). However, the paragraphs surrounding this allegation and context dictate that this is a typographical error.

of personal property; (6) fraud; (7) unfair and deceptive trade practices; (8) punitive damages; (9) battery; (10) assault; (11) false imprisonment; and (12) intentional infliction of emotional distress. [Doc. No. 44]. By way of this Court's June 8, 2015 Order, Parlier returned Allie to Casteen. *See* [Doc. No. 62]; *see also* [Doc. No. 72] at p. 2 (¶ 9) (testimony from Casteen regarding the return of Allie). Subsequently, on February 25, 2016, the Court found Parlier in default on Casteen's amended counterclaim. [Doc. No. 72]. This matter came before the Court for an evidentiary hearing on April 7, 2016 regarding Parlier's default. At that hearing, arguments were heard from counsel,[5] evidence was submitted for the Court's consideration, and Casteen's testimony was admitted by way of affidavit.

In her affidavit, Casteen admits that Allie was returned to her by order of the Court. [Doc. No. 72] at p. 2 (¶ 9). She testifies that both Ruby and Buttercup are worth $1,750.00 each. *Id.* at p. 2 (¶ 5). She does not demand the return of either Ruby or Buttercup. *Id.* at p. 2 (¶ 13). Casteen further testifies that Maggie's purchase price "was $1,612.50." *Id.* at p. 2 (¶ 7). Casteen also testifies that Jameson was not five (5) years old at the time of the trade, as Parlier represented to her, but that the horse was, in actuality, between twelve (12) and fourteen (14) years old. *Id.* at p. 2 (¶ 8). She testifies that, as a result of this fraud in trade, she lost $1,000.00 in value. *Id.*

Consequently, Casteen seeks liquidated damages against Parlier as follows: $1,750.00 for the cost of Ruby; $1,750.00 for the cost of Buttercup; $1,612.50 for the cost of Maggie; and $1,000.00 for Jameson's lost value. [Doc. No. 72] at p. 2 (¶ 13). In addition, Casteen seeks an award of attorneys' fees and costs; punitive and treble damages under North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1, *et seq*. (hereinafter, the "UDTPA"); and an order releasing the bond deposited with the Court for purposes of the claim and delivery of Allie.

---

[5] Though he had been proceeding *pro se* immediately prior to the default judgment hearing, Wallace Respess, Jr. entered a general appearance on Parlier's behalf at the hearing and remains Parlier's counsel of record.

*Id.* The Court will now review Casteen's claims and requests for relief for the purpose of determining whether default judgment against Parlier is appropriate and, if so, the amount and type of relief to which she is due.

      C.      <u>Parlier's Liability Based Upon his Admissions of Fact Due to Default</u>

           1.    *Counts 9 through 12 – Battery, Assault, False Imprisonment, and Intentional Infliction of Emotional Distress*

Casteen's amended counterclaim asserts state law causes of action for battery, assault, false imprisonment, and intentional infliction of emotional distress ("IIED"). Upon default, the factual allegations – as opposed to the legal conclusions – of a claim for affirmative relief are accepted as true for all purposes excluding the determination of damages. *See Ryan*, 253 F.3d at 780 ("[D]efault is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover" (citing *Nishimatsu*, 515 F.2d at 1206)). Accordingly, to be awarded damages at default judgment, a counter-plaintiff must, therefore, prove her damages by a preponderance of the evidence. *See Everyday Learning v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (affirming district court's decision not to award damages after default judgment hearing where damages were "speculative and not proven by a fair preponderance of the evidence."); *Spangler v. Colonial Ophthalmology*, 235 F.Supp.2d 507, 510 (E.D.Va. 2002).

The Court has reviewed the amended counterclaim's factual allegations and finds that the above-referenced causes of action have been properly plead and admitted. However, Casteen has not presented any evidence to this Court to demonstrate that she has sustained any damages related to those claims for relief. Accordingly, under North Carolina law, Casteen is entitled to nominal damages on those claims only. *See*, *e.g.*, *Hawkins v. Hawkins*, 331 N.C. 743, 417 S.E.2d 447, 449 (N.C. 1992); *see also Heaton-Sides v. Snipes*, 233 N.C. App. 1, 755 S.E.2d 648, 652 (N.C. Ct. App. 2014) ("[E]ven if a plaintiff fails to prove actual damages, she can still recover nominal

damages."). Additionally, Casteen has abandoned any claim for punitive damages arising from her IIED claim because no evidence or argument in support of punitive damages was presented to the Court at the hearing.[6] Accordingly, the Court declines to award Casteen any punitive damages arising from her IIED claim. *See*, *e.g.*, N.C. Gen. Stat. § 1D-35 (providing that a party's entitlement to punitive damages is at the discretion of the finder-of-fact); *Sherrill v. Boyce*, 265 N.C. 560, 144 S.E.2d 596, 597 (N.C. 1965) (holding that when damages are proved to the court rather than a jury, the determination of damages awarded is left to the sound discretion of the trial judge); *Mullins by Mullins v. Friend*, 116 N.C. App. 676, 449 S.E.2d 227, 232 (N.C. Ct. App. 1994) (same); *accord Little Beaver Enters. v. Humphreys Rys.*, 719 F.2d 75, 79 (4th Cir. 1983) ("The trial court, as a fact-finder, possesses considerable discretion in fixing damages, and its decision will be upheld absent clear error.").

>    2.   *Counts 1 through 5 – Claim and Delivery, Breach of Contract, Implied Contract/Quantum Meruit/Unjust Enrichment, Conversion, and Possession of Personal Property*

Casteen's amended counterclaim also asserts state law causes of action for claim and delivery, breach of contract, implied contract, *quantum meruit*, unjust enrichment, conversion, and possession of personal property. In relation to those claims, Casteen's counterclaim alleges that she suffered damages because (1) Parlier unlawfully refused to return Allie, Ruby, and Buttercup to her possession; (2) Parlier retained possession of Ruby and Buttercup, and failed to sell them as previously agreed; (3) Parlier sold Maggie without reimbursing her the cost for Maggie's purchase; and (4) Parlier failed to divide with her the net profits from Maggie's sale.

First, with respect to her cause of action for claim and delivery, Casteen seeks the return of Allie, Ruby, and Buttercup. *See* [Doc. No. 44] at p. 19 (¶¶ 79-87). Casteen admits that Allie was

---

[6] Casteen's amended counterclaim does not seek punitive damages for battery, assault, or false imprisonment. *See* [Doc. No. 44] at pp. 23-25 (¶¶ 141-163).

returned to her per this Court's prior order. *See* [Doc. No. 60]; [Doc. No. 74] at p. 2 (¶ 9). As for Ruby and Buttercup, Casteen's affidavit does not request that they be returned to her possession. *See* [Doc. No. 74]. Further, at the default judgment hearing, Casteen's counsel did not request that either Ruby or Buttercup be returned to Casteen's possession. Instead, based on her representations to the Court through her affidavit testimony and her counsel's submissions at the hearing, Casteen now apparently seeks to recover only the cost of Ruby and Buttercup from Parlier. *See*, *e.g.*, [Doc. No. 74] at p. 2 (¶ 13). Accordingly, to the extent that the amended counterclaim's first cause of action ("Claim and Delivery") demands that possession of Ruby and Buttercup be delivered to Casteen, default judgment as to that claim is hereby **DENIED** and the claim is **DISMISSED**. To the extent the first cause of action ("Claim and Delivery") demands that Casteen's rightful possession of Allie be memorialized and affirmed in a judgment, default judgment as to that demand is hereby **GRANTED**. Moreover, Casteen's request that the bond on Allie be returned is hereby **GRANTED** in accordance with North Carolina law.

Next, the Court must consider Casteen's claim for breach of contract. Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000). In her claim for breach of contract, Casteen alleges that she and Parlier had an agreement that Parlier would undertake the obligation to sell Ruby, Buttercup, and Maggie. [Doc. No. 44] at pp. 19-20 (¶¶ 88-101). In exchange, Parlier would split the profits from the sales with Casteen, and would also reimburse her for the cost of Maggie. *Id.* Parlier failed to keep his part of the bargain by retaining possession of Ruby and Buttercup, and by selling Maggie without either reimbursing Casteen or dividing the profits with her. *Id.* At the default judgment hearing, Parlier, through counsel, admitted to the existence of a contract and to the breach of that contract.

Consequently, the Court finds that the factual allegations contained in the amended counterclaim satisfy the elements of a claim for breach of contract under North Carolina law. In support of that claim, Casteen has introduced evidence of damages amounting only to the cost of Ruby, Buttercup, and Maggie. *See* [Doc. No. 74] at p. 2 (¶ 13a-c). Those costs are as follows: $1,750.00 for Ruby; $1,750.00 for Buttercup; and $1,612.50 for Maggie. *Id.* At the hearing, Parlier did not contest those amounts. Casteen has not produced any further evidence of damages resulting from Parlier's breach of contract. Accordingly, default judgment is hereby **GRANTED** as to the amended counterclaim's second cause of action ("Breach of Contract"), and the Court hereby **AWARDS** Casteen damages in the amount of **FIVE-THOUSAND AND ONE-HUNDRED AND TWELVE DOLLARS AND FIFTY CENTS ($5,112.50)**.

The Court must also consider Casteen's claims for implied contract, *quantum meruit*, and unjust enrichment. When an express contract exists between two parties, it is unlawful for one party to recover from the other under a theory of implied contract, *quantum meruit*, or unjust enrichment, where those claims concern the same subject-matter as the express contract. *See*, *e.g.*, *Booe v. Shadrick*, 322 N.C. 567, 369 S.E.2d 554, 556 (N.C. 1988); *Barrett Kays & Associates, P.A. v. Colonial Bldg. Co. of Raleigh*, 129 N.C. App. 525, 500 S.E.2d 108, 111 (N.C. Ct. App. 1998) (citing *Whitfield v. Gilchrist*, 348 N.C. 39, 497 S.E.2d 412 (N.C. 1998)); *Catoe v. Helms Const. & Concrete Co.*, 91 N.C. App. 492, 372 S.E.2d 331, 335 (N.C. Ct. App. 1988) (citing *Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 124 S.E.2d 905, 908 (N.C. 1962)). Casteen's claims for implied contract, *quantum meruit*, and unjust enrichment concern the same subject-matter as her claim for breach of contract. *See* [Doc. No. 44] at pp. 20-21 (¶¶ 102-108). Accordingly, default judgment is hereby **DENIED** as to the amended counterclaim's third cause

of action ("Implied contract/*Quantum Meruit*/Unjust Enrichment"), and such claims are hereby **DISMISSED**.

The Court next considers Casteen's causes of action for conversion and possession of personal property. [Doc. No. 44] at p. 21 (¶¶ 109-119). The elements of conversion require proof of "(1) ownership in the [counter-]plaintiff, and (2) a wrongful conversion by the [counter-]defendant." *See Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 665 S.E.2d 478, 489 (N.C. Ct. App. 2008). The Court construes Casteen's claim for "possession of personal property" as a claim for trespass to chattels. To state a claim for trespass to chattels, the party bringing the claim must demonstrate "that she had either actual or constructive possession of the personalty or goods in question at the time of the trespass, and that there was an unauthorized, unlawful interference or dispossession of the property." *Steele v. Bowden*, 768 S.E.2d 47, 55 (N.C. Ct. App. 2014) (citing *Fordham v. Eason*, 351 N.C. 151, 521 S.E.2d 701, 704 (N.C. 1999)).

Here, the Court finds that the amended counterclaim's well-plead factual allegations establish Casteen's claims for conversion and trespass to chattels. With respect to conversion, Casteen has alleged that she owned Allie, Ruby, and Buttercup. *See* [Doc. No. 44] at p. 21 (¶ 110). She also alleges that Parlier was not the owner of those horses, and that he used them in his Carriage Business without her permission or authorization. *See id.* at p. 21 (¶¶ 112-114). Those allegations are deemed admitted and satisfy Casteen's claim for conversion.

"Once a party has stated a claim for conversion, the party must present evidence that will provide a basis for determining damages. For a conversion claim, damages are determined by the fair market value of the converted property at the time of the conversion, plus interest." *Heaton-Sides v. Snipes*, 233 N.C. App. 1, 755 S.E.2d 648, 651 (N.C. Ct. App. 2014) (internal citations and

quotation marks omitted). Actual damages, however, are not an essential element of a conversion claim. Consequently, even if a party fails to prove actual damages, she can still recover nominal damages. *See Fagan v. Hazzard*, 34 N.C. App. 312, 237 S.E.2d 916, 917 (N.C. Ct. App. 1977) (affirming a trial court's award of one dollar as nominal damages when the plaintiff proved conversion but not actual damages).

In her submissions, Casteen only introduced evidence of the cost of Ruby and Buttercup. *See* [Doc. No. 74] at p. 2 (¶ 13). Casteen has introduced no evidence of the damages she incurred as a result of Parlier's conversion of Allie, and Allie has already been returned to her possession. Casteen has also not introduced evidence of Allie's value, nor has she claimed an entitlement to such value. The Court has already awarded Casteen damages for the cost of Ruby and Buttercup in relation to her claim for breach of contract. Accordingly, based on the evidence submitted, the Court hereby **GRANTS** default judgment as to the amended counterclaim's fourth cause of action ("Conversion"), and **AWARDS** Casteen nominal damages in the amount of **THREE DOLLARS ($3.00)**.

With respect to the claim for trespass to chattels, the Court finds that Casteen has properly alleged that she owned and was entitled to possess Allie, Ruby, and Buttercup. *See*, *e.g.*, [Doc. No. 44] at p. 21 (¶ 118). Moreover, as has been discussed throughout this Order, Casteen has similarly plead facts showing that Parlier unlawfully interfered with and dispossessed her of those horses. As with her claim for conversion, however, Casteen has failed to prove additional damages beyond the cost of Ruby and Buttercup, which have already been awarded. "Where a trespass is shown the party aggrieved is entitled at least to nominal damages." *Lee v. Stewart*, 218 N.C. 287, 10 S.E.2d 804, 805 (N.C. 1940). Consequently, based on the evidence submitted, the Court hereby **GRANTS** default judgment as to the amended counterclaim's fifth cause of action ("Possession of Personal

Property"), and **AWARDS** Casteen nominal damages in the amount of **THREE DOLLARS ($3.00)**.

        3.      *Counts 6 through 8 – Fraud, Unfair and Deceptive Trade Practices, and Punitive Damages*

Casteen's amended counterclaim also asserts state law causes of action for fraud, unfair and deceptive trade practices, and punitive damages arising out of such claims. In relation to those claims, Casteen's counterclaim alleges that she suffered damages because of Parlier's deceitful and false representations relating to the Jameson trade, and because of his conduct during the other business transactions which took place throughout their business relationship. *See*, *e.g.*, [Doc. No. 44] at pp. 21-23 (¶¶ 120-140).

Under North Carolina law, an action for fraud may be sustained if the following essential elements are met: "(1) [a] False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injury party." *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E.2d 494, 500 (N.C. 1974). Further, per the UDTPA, any act or practice in or affecting commerce that is "unfair or deceptive" is deemed to be unlawful. *See* N.C. Gen. Stat. § 75-1.1(a). "Commerce" is defined to encompass "all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b). "A trade practice is deceptive if it has the capacity or tendency to deceive." *Smith v. Cent. Soya of Athens, Inc.*, 604 F. Supp. 518, 530 (E.D.N.C. 1985) (citing *Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397, 403 (N.C. 1981)). A practice is unfair, according to the North Carolina courts, when it "offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* "'Unfairness' is broader than and subsumes the concept of 'deception.'" *Id.* Whether a trade practice is unfair or deceptive depends

on the circumstances of each case. *See Marshall*, 276 S.E.2d at 403. However, simple breach of contract is insufficient to support a claim under the UDTPA. *See Dowless v. Warren-Rupp Houdailles, Inc.*, 866 F.2d 1415 (4th Cir. 1989).

As stated by the Court during the April 7, 2016 hearing, the Court finds that Parlier engaged in unfair and deceptive trade practices with respect to the manner in which he engaged in the Jameson trade. Additionally, the Court finds that Parlier's conduct respecting the Jameson trade satisfies the elements of a claim for fraud. The Court finds that the Jameson trade is the only factual circumstance alleged in the amended counterclaim which satisfies the statutory requirements for a claim under the UDTPA and a claim for fraud.

At the hearing and through her affidavit testimony, Casteen proffered evidence that her damages arising from the fraud and UDTPA claims amount only to $1,000.00, that amount being Jameson's lost value. *See* [Doc. No. 74] at p. 2 (¶ 13d). Because the Court finds that the $1,000.00 in damages flows from a violation of the UDTPA, such amount must be trebled to the amount of $3,000.00. *See* N.C. Gen. Stat. § 75-16; *Atl. Purchasers, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712, 715 (4th Cir. 1983) ("The award of treble damages is a right of the successful plaintiff and is not subject to judicial discretion." (citing *Marshall*, 276 S.E.2d at 402)). Accordingly, the Court hereby **GRANTS** default judgment as to the amended counterclaim's sixth and seventh causes of action ("Fraud" and "Unfair and Deceptive Trade Practices"), and **AWARDS** Casteen damages in the amount of **THREE-THOUSAND DOLLARS ($3,000.00)**. *See Ellis v. N. Star Co.*, 326 N.C. 219, 388 S.E.2d 127, 132 (N.C. 1990) (calculating the total award under the UDTPA to be three times actual damages).

The Court **DENIES** default judgment as to the amended counterclaim's eighth cause of action ("Punitive Damages") because that claim seeks punitive damages based upon the same conduct as underlies Casteen's fraud and UDTPA claims, and North Carolina law does not allow an award of both punitive damages *and* treble damages for the same underlying conduct. *See Ellis*, 388 S.E.2d at 132. Regardless, the Court declines to exercise its discretion to award punitive damages to Casteen based upon Parlier's fraudulent conduct. *See*, *e.g.*, *Little Beaver Enters.*, 719 F.2d at 79.

    4.    *Attorneys' Fees*

Lastly, the Court turns its attention to the issue of attorneys' fees. In her Motion, Casteen seeks reimbursement for the attorneys' fees and expenses she reasonably incurred as a result of Parlier's discovery violations. *See*, *e.g.*, [Doc. No. 66] at p. 4; [Doc. No. 71] at p. 3. Casteen seeks her fees and expenses pursuant to Rule 37 of the Federal Rules of Civil Procedure, which provides that a district court may award the reasonable attorneys' fees and expenses incurred by a party that are related to a meritorious motion to compel discovery, and that are related to a disobedient party's failure to comply with a prior court order. *See* Fed. R. Civ. Pro. 37(a)(5)&(b)(2)(C). Here, Parlier refused to engage Casteen in the discovery process (thus forcing her to file multiple motions to compel and motions for sanctions), *and* he failed to comply with this Court's prior discovery order. *See* [Doc. No. 63]; [Doc. No. 64]; [Doc. No. 66]; [Doc. No. 71]. At the hearing on this matter, Parlier's counsel allowed as how attorneys' fees and expenses are appropriate for his client's discovery violations.

On this issue, the Court heard evidence on the attorneys' fees and expenses reasonably incurred by Casteen in her pursuit of discovery. Casteen's counsel argued that $1,245.00 represents the appropriate amount of fees and expenses incurred. Parlier's counsel largely agreed, but

objected to the fees incurred on October 14, 2015 to secure a collateral affidavit from Jason Orndoff, a partner at the firm representing Casteen. *See* [Doc. No. 66-3] (affidavit secured to testify to the appropriateness of the fee amount charged). The Court sustains Parlier's objection to this portion of the fee, which represents $150.00 of Casteen's request. Therefore, $150.00 is deducted from the amount requested by Casteen. Accordingly, the Court hereby **AWARDS** to Casteen and from Parlier the amount of **ONE-THOUSAND AND NINETY-FIVE DOLLARS AND ZERO CENTS ($1,095.00)** as reimbursement for her reasonable attorneys' fees and expenses incurred because of Parlier's discovery violations.

At the default judgment hearing, Casteen also sought reimbursement of all of her attorneys' fees pursuant to North Carolina's UDTPA statute. There, Casteen argued that all of her claims and damages arose from Parlier's unfair and deceptive trade practices. Parlier objected to this request and argued that, at most, Casteen could only show that the Jameson trade amounted to a violation of the UDTPA, and that she could only recover additional fees (over and above those awarded under Rule 37, if any) if such fees could be tied to the litigation of that single issue.

Under the "American Rule," parties are responsible for their own attorneys' fees. *In re Crescent City Estates, LLC*, 588 F.3d 822, 825 (4th Cir. 2009) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994)). Succinctly stated, the Rule provides that each litigant pays his or her own attorneys' fees, win or lose, unless a statute or contract provides otherwise. *Baker Botts L.L.P. v. ASARCO LLC*, ___ U.S. ___, 135 S.Ct. 2158, 2164 (2015). Because the American Rule is rooted in the common law, dating as far back as the 18th century, a party who seeks to deviate from it by requesting attorneys' fees from her opposing party must have a statutory or contractual justification. *Baker Botts*, 135 S.Ct. at 2164; *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 271 (1975) ("[A]bsent [a] statute or enforceable contract, litigants pay their own

attorneys' fees."). The party seeking to recover attorneys' fees has the burden of demonstrating that it is entitled to the fees sought, and that the amount it seeks is reasonable. *See Airlines Reporting Corp. v. Sarrion Travel, Inc.*, 846 F.Supp.2d 533, 536 (E.D.Va. 2012).

Here, North Carolina statute provides that attorneys' fees are recoverable in a suit for a violation of Section 75-1.1 of the UDTPA. *See* N.C. Gen. Stat. § 75-16.1. However, once certain elements are proven, fees are only recoverable at the presiding judge's *discretion*. *See id.* The Court agrees with Parlier that Casteen may only recover those fees that are directly related to her UDTPA claim, which arises from the Jameson trade. However, the Court need not delve into the specifics of what elements must be proven in order to recover a fee under Section 75-16.1 because Casteen has not met her burden to prove the *actual fees incurred* in relation to her claim.

Specifically, even assuming Casteen may recover the attorneys' fees associated with her UDTPA claim, Casteen has not provided this Court with a specific accounting as to which fees are associated with the prosecution of that claim. While Casteen has filed the affidavit of her counsel, which includes a detailed time sheet, the recorded time entries do not explain which entries concern work performed on the UDTPA claim and which entries concern work performed on other claims. As a result, Casteen's claim is speculative and undefined, and must therefore be denied. Regardless, Section 75-16.1 leaves it to the judge's discretion to award attorneys' fees. *See* N.C. Gen. Stat. § 75-16.1. Because of the speculative nature of her claim, the Court declines to exercise its discretion in Casteen's favor. Accordingly, the Court hereby **DENIES** Casteen's request for attorneys' fees arising out of the prosecution of her UDTPA claim. *See*, *e.g.*, *Spangler*, 235 F.Supp.2d at 510 (declining to award certain damages because the plaintiff "failed to prove the[] damages by a preponderance of the evidence").

II. **DECRETAL**

**IT IS, THEREFORE, ORDERED THAT**

(1) Casteen's original and renewed Motions to Dismiss and for Contempt, Sanctions, and Attorneys' Fees, (Doc. No. 66) and (Doc. No. 71), are hereby **GRANTED-IN-PART** and **DENIED-IN-PART**;

(2) Casteen's request for Default Judgment against Parlier on her amended counterclaim is hereby **GRANTED-IN-PART** and **DENIED-IN-PART** as specified throughout this Order;

(3) Casteen is hereby **AWARDED** the amount of **EIGHT-THOUSAND AND ONE-HUNDRED AND EIGHTEEN DOLLARS AND FIFTY CENTS ($8,118.50)** in damages, and Casteen shall be entitled to recover such damages from Parlier;

(4) Casteen is **FURTHER AWARDED** the amount of **ONE-THOUSAND AND NINETY-FIVE DOLLARS AND ZERO CENTS ($1,095.00)** in reasonable attorneys' fees and expenses related to Parlier's various discovery violations, and Casteen shall be entitled to recover such fees and expenses from Parlier;

(5) Casteen is **FURTHER AWARDED** her costs in this action; pre-judgment interest, in accordance with applicable law; and post-judgment interest, in accordance with applicable law;

(6) Casteen's request that the bond deposited with the Court for purposes of the claim and delivery of Allie (Doc. No. 62) be released is hereby **GRANTED**; and

(7) The Clerk is directed to administratively terminate this case following entry of Judgment in favor of Casteen and against Parlier.

**SO ORDERED**.

Signed: May 26, 2016

Richard L. Voorhees
United States District Judge